**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ASSOCIACÃO DOS PROFISIONAIS DOS
CORREIOS,

                              Petitioner,

        -against-

THE BANK OF NEW YORK MELON CORPORATION,

                              Respondent.
-----------------------------------------------------------------X

**OPINION AND ORDER**

**22-MC-0132 (RA) (KHP)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/04/2022

**KATHARINE H. PARKER, United States Magistrate Judge:**

      Associacão dos Profisionais dos Correios ("ADCAP") is the Brazilian Postal Workers Association. It represents the interests of over ten thousand present and retired postal workers of a state-owned public postal company, Correios, who participate in a private pension fund called Postalis.[1] Respondent Bank of New York Mellon ("BNY Mellon"), based in New York, is a financial services firm. Its indirect Brazil subsidiary, BNY Mellon Servicos Financeiros Distribuidora de Titulos e Valores Mobilarios S.A. ("DTVM") provided fund administration and related investment services to Postalis in Brazil. DTVM is a direct subsidiary of BNY Participacoes, a Brazilian company, which in turn is a subsidiary of Mellon Overseas Investment Corporation, a U.S. company, which is a direct subsidiary of BNY Mellon. Postalis pension funds suffered significant losses to the tune of 5.6 billion Brazilian Reals ("BRL").[2] The losses resulted in various civil and criminal proceedings in Brazil against persons and entities deemed

---

[1] Postalis' full name is Instituto de Seguridade Social dos Correios e Telegrafos. Correios' full name is Empresa Brasileira de Correio e Telegrafos.

[2] For a description of the Postalis investments, which included two foreign debt funds, and the alleged fraud and mismanagement of the funds, see *In re Postalis*, 2018 WL 6725406, at *2 (S.D.N.Y. Dec. 20, 2018).

responsible for the losses, including an action by ADCAP to recover losses suffered by its members who are members and beneficiaries of the Postalis pension plans.

ADCAP submitted an application pursuant to 28 U.S.C. § 1782 requesting that this Court authorize issuance of a subpoena demanding that BNY Mellon produce documents that it contends are relevant to and for use in its Brazil action.  BNY Mellon objects to the application on the grounds that the documents are not really for use in the Brazil litigation but rather an attempt to obtain pre-suit discovery for a planned action against it in the United States, and because the requests are overbroad.  For the reasons set forth below, Petitioner's application is DENIED.

## BACKGROUND

1. **The Brazil Litigation**

ADCAP's lawsuit in Brazil is aimed at Postalis, Correios, KPMG Auditores Independentes ("KPMG"), and DTVM and pending in the Special Federal Court of Sao Paulo.  (ECF No. 1-2, at 1.) ADCAP alleges in that suit that between 2011 and 2015, defendants engaged in misconduct, malfeasance, and breaches of fiduciary duty leading to significant losses to the pension fund. (*Id.* at 2)  They attribute approximately 2.7 billion BRL in losses to DTVM.  (*Id.*)

ADCAP contends that DTVM assured Postalis of its ability to act as a fiduciary and advisor for the funds' assets, including those invested for the benefit of ADCAP's members.  In reliance on DTVM's assurances, Postalis entered into a contract with DTVM.  (*Id.*)  DTVM's responsibilities included, among other things, asset pricing of Postalis' bonds and securities portfolio, investment funds and other structures; control and compliance with fund-applicable by-laws, regulations and investment policies; prevention of money laundering, corruption and

other crimes; and assessment, control and monitoring of risks and ongoing non-compliance detection. (ECF No. 17-8 at 5.)

ADCAP asserts that DTVM breached its fiduciary and contractual duties to the funds by investing funds in a single invested asset, contrary to applicable regulations; failing to perform proper oversight over the invested assets; allocating amounts to investments that were contrary to applicable investment regulations; and assuming levels of investment risk beyond the applicable investment parameters. (Decl. of Andre de Almeida Rodrigues, ECF No. 4 (hereinafter, "Almeida Decl.") ¶ 46.)

The Brazil lawsuit, filed in 2015, was dismissed. (*Id.*) However, on August 6, 2021, it was reinstated after the appellate court found that dismissal was improper and that the action could proceed in two separate courts. (*Id.*) As a result, the action against DTVM and Postalis is now proceeding in the State Justice Courts.

Shortly after the Brazil litigation was reinstated, on August 25, 2021, ADCAP's Brazilian counsel wrote a letter to BNY Mellon in the U.S. accusing it of wrongdoing and seeking to engage in possible settlement talks. (Decl. of Jeffrey A. Rosenthal, ECF 17, (hereinafter, "Rosenthal Decl."), Exh. H.) ADCAP also collected money from its members to initiate a lawsuit against BNY Mellon in New York and communicated its intent to file an action in the U.S. to recoup monies for the pension plan. (*Id*. at Exhs. A-K.)

ADCAP does not deny that it was seriously exploring suit against BNY Mellon in the U.S. up to two months before engaging U.S. counsel in April 2022. (Reply, ECF No. 21 at 2.) However, according to ADCAP, its strategy changed once it hired U.S. counsel and learned that it could not use discovery obtained through a Section 1782 application to sue BNY Mellon in the

3

U.S. (*Id.*) It points to a May 12, 2022 communication to its members and news article as evidencing proof of this change in strategy. (*Id.* at 2-3.) In the communication, ADCAP tells its members about its initiative "to also sue BNY Bank" and refers them to an article that describes its Section 1782 application in this District as a way of obtaining discovery for use in the Brazil actions. (Rosenthal Decl. at Exh. K.) ADCAP's Brazilian lawyer is quoted as stating, "The objective is to link the American bank to the fraud that occurred in Brazil. ADCAP's lawsuit against BNY seeks compensation for the lost billions.. . ." (*Id.*)[3] ADCAP asserts that "the American Bank" refers to DTVM, and that the article demonstrates that the purpose of this application is to obtain discovery for use in the Brazil action. BNY Mellon argues that this article suggests the opposite of a change in strategy and rather that the goal of this application is to obtain documents that might link the U.S. entity to the alleged fraud so that it can be sued in the U.S.

2. **The Instant Request**

ADCAP retained U.S. counsel in April 2022 purportedly solely to file the instant application. ADCAP's proposed subpoena contains eight separate requests for documents from BNY Mellon and all its subsidiaries, divisions, successors, and affiliates (foreign and domestic) and all persons acting on their behalf, which are paraphrased as follows:

- All documents, communications exchanged, and information that formed the decision-making process concerning internal examinations concerning Operation Pausare, potential wrongdoing by three former DTVM executives who were all fired

---

[3] At oral argument, counsel for ADCAP challenged the certified translation of this document, but did not provide a revised translation.

by DTVM, the 2015 Pension Fund Parliamentary Investigation Committee Hearing in Brazil, any part of the services rendered by any BNY Mellon entity to Postalis between 2010 and 2019, potential and actual conflicts of interest between BNY Mellon entities and persons and Postalis entities and persons that received investments from funds managed by BNY Mellon entities such as Global Gestao em Saude, Conceito Consultoria and Canabrava Group,[4] investigations conducted by Veirano Advogados on behalf of BNY Mellon entities concerning potential wrongdoing by one of the three former executives referenced above (Jose Carlos Lopes Xavier de Oliveira);

- Notes of interviews conducted internally by BNY Mellon entities with the three fired executives on any of the topics listed in the first bullet above;

- All documents related to approval and analysis of eleven specified funds pertaining to the creation of the funds, changes to their regulation, investment allocation and policy, and the like;

- Forensic accounting reports, internal audits, findings from continuous monitoring, and other related documentations, prepared and/or examined by departments of Compliance, Asset Allocation, Operational Risk & Internal Controls and/or Legal of BNY Mellon entities that encompassed the services rendered by them to Postalis from 2010 through 2019;

---

[4] Canabrava Group allegedly received investments despite being defunct and was the target of Search and Seizure Warrants.

- Communications exchanged between and among the three fired executives and other employees of BNY Mellon entities concerning the creation and management of the eleven specified funds;

- Communications exchanged by any employee of any BNY Mellon entity with the principals of Global Gestao em Saude or Canabrava group;

- Internal communications exchanged among employees and advisors of BNY Mellon entities discussing requests made by the 2015 Pension Fund Parliamentary Investigation Committee Hearing in Brazil and other Brazilian authorities in connection with the services rendered to Postalis;

- Any and all internal analyses conducted by BNY Mellon entities in connection with potential liability and damages caused to Postalis beneficiaries and/or ADCAP's members.

3. **Postalis' Prior Request for Documents Pursuant to 28 USC § 1782**

Like ADCAP, Postalis itself is involved in various litigations against BNY Mellon subsidiaries in Brazil concerning the pension funds. In 2018, it filed an action in this District pursuant to 28 USC § 1782 also seeking documents from BNY Mellon. In that application, Postalis sought documents spanning the time period 2005 to February 2016 and a deposition of a BNY Mellon representative. The documents requested were "all documents . . . in your possession, custody or control concerning: the Brazil Funds, including the management of the Brazil Funds, investment decisions related to them, and any investigation You conducted with respect to BNYM Brazil's administration and/or management of the Brazil Funds." *In re Postalis*, 2018 WL 6725406, at *2 n.3. Postalis contended that the information sought would

assist it in proving that BNY Mellon and its subsidiaries acted negligently and breached their fiduciary duties to the pension funds.

BNY Mellon disputed that the information sought was for use in the Brazil proceedings and pointed to Postalis's own public statements about its intent to file an action against BNY Mellon in the United States and that the information it was seeking would help bolster that action. *Id.* at *4. No representative from Postalis contradicted the public reporting of the purpose of the Section 1782 application. Rather, Postalis stated that the information would be used primarily in the Brazil proceedings and that Postalis was not precluded from using the information to also initiate suit in the U.S. if in fact the information incidentally supported such an action. *Id.*

The Honorable John G. Koeltl denied the application on the ground that the information sought was more in the nature of a fishing expedition than obtaining documents for use in the Brazil litigations, noting that the application was not limited to specific issues in the Brazil litigations and appeared to focus on conduct and knowledge of BNY Mellon in the U.S., not of its Brazil subsidiaries. *Id*. Because the Federal Rules of Civil Procedure do not allow for pre-litigation discovery, he deemed Postalis's application to be improper and sought in bad faith. *Id*.

Judge Koeltl also rejected Postalis's suggestion that a protective order precluding it from using the information in a suit against BNY Mellon in the U.S. would address any concerns about whether the information was for use in Brazil. He reasoned that the results of the broad discovery requested would "shape the decision" whether to bring a lawsuit against BNY Mellon in the U.S. and inform the types of information to seek in discovery in such a lawsuit. *Id*.

Finally, he found that the discretionary factors that courts consider after determining an application is for use in a foreign proceeding also weighed against granting the application, noting, among other things, that the breadth of the information sought rendered the discovery unduly burdensome and that the availability of information directly from BNY Mellon Brazil subsidiaries who were parties in the Brazil litigation weighed against granting the application. *Id*. at *6-7.

**APPLICABLE LEGAL STANDARD**

Section 1782 empowers a United States district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party. 28 U.S.C. § 1782(a). Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)). The burden is on the applicant to meet these requirements. *In re Postalis*, 2018 WL 6725406, at *3.

Provided the statutory requirements for discovery are met, the Court must then determine, in its discretion, whether the discovery should be permitted in light of the four so-called *Intel* factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;

- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;

- Whether the discovery requests are an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and

- Whether the discovery is unduly intrusive or burdensome.

*Id*. at 264-65.  When evaluating these factors, the Court must be mindful of the goals of Section 1782:  to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts.  *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

## DISCUSSION

In the instant case, the first and third statutory requirements are undisputed.  Only the second requirement is disputed – whether the information sought is "for use" in a foreign proceeding.  In this regard, the Second Circuit has stated that "[i]f the judge . . . suspects that the [§ 1782 discovery] request is a 'fishing expedition' . . . the district court should deny the request."  *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery* ("*Metallgesellschaft*"), 121 F.3d 77, 79 (2d Cir. 1997) (citation omitted).

In the *Metallgesellschaft* case, the applicant, a German company, sought discovery from a former president of its U.S. subsidiary in connection with an employment action brought by that former president pending in the German Labor Court.  *Id.* at 77.  The German suit involved whether the former president was entitled to severance pay, and the company sought

9

information relevant to its defense that the former president was violating a non-compete obligation on which severance was conditioned.  The District Court granted the application initially.  However, the former president refused to comply, claiming the information sought was privileged under German law.  *Id.*  As a result, the company moved to compel compliance.  *Id.*  The District Court denied the motion to compel and vacated the subpoena on the grounds that the discovery should have been sought in the German Labor Court and the information sought would not have been available if it had been sought in that court.  *Id*. at 78.  The Second Circuit reversed the decision of the District Court, finding that it was error to deny discovery pursuant to Section 1782 merely because the discovery might be available in the foreign court.  *Id*. at 79.  It clarified that the availability of discovery in the foreign court might be a basis to find that the discovery sought pursuant to Section 1782 was duplicative or burdensome, but the availability of such discovery could not be the sole basis to deny discovery under Section 1782.  *Id.*  It is in this context that the Circuit cited to the Eleventh Circuit case, *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated on other grounds, *Intel*. 542 U.S. at 259.   There was never any question in the *Metallgesellschaft* case that the information sought was "for use" in a foreign proceeding.

    Since *Metallgesellschaft,* the Second Circuit has elaborated on the "for use" prong of the statute.  It has stated that the discovery must be employable for "some advantage" in the foreign proceeding, whether such proceeding is imminent or pending.  *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  More recently, it has stated that an applicant who properly has obtained discovery through a Section 1782 application is not barred from using the discovery elsewhere, including in the U.S., "unless the district court orders otherwise."  *In re*

10

*Accent Delight Int'l Ltd.*, 869 F.3d at 135.  The Circuit nevertheless allowed that should the target of a Section 1782 application suspect that the statute is being used as a ruse for use in other proceedings that could not have met the requirements of Section 1782, it could "bring evidence of such chicanery to the [Section] 1782 court's attention." *Id*. (quoting *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015)).

According to BNY Mellon, it is just such chicanery in which ADCAP is engaging.  BNY Mellon contends that ADCAP's raising of money for a lawsuit against BNY Mellon in the U.S., statements to its members that it was planning to bring suit against BNY Mellon in New York, and lack of evidence that it has returned the money raised for this purpose, all belie ADCAP's claim that it changed strategy upon hiring U.S. counsel and has abandoned the possibility of suing BNY Mellon in the U.S.  As noted above, it also contends that the May 12, 2022 communication and article confirm ADCAP's hope to link BNY Mellon to the alleged wrongdoing, which would enable ADCAP to bring suit in the U.S. against BNY Mellon.

The court in *Ayyash v. Crowe Horwath LLP, et al.*, denied a Section 1782 application because it suspected the information sought was not "for use" in a foreign proceeding based on pronouncements similar to that ADCAP has made to its members.  2018 WL 2976017 (S.D.N.Y. June 13, 2018).  The petitioner in that case was the majority owner of two Lebanese banks who had initiated a criminal complaint in Lebanon against its main auditor, Horwath Abou Chakra and Co., an affiliate of the U.S. entity from which he sought discovery.  The application was aimed at obtaining information explaining the guidance and oversight provided to the Lebanese entity by the U.S. entity and the legal relationship between the companies so the Lebanese Court could determine whether the U.S. entity had separate liability from the Lebanese entity.

11

The question of whether the discovery was "for use" in the foreign proceeding was thus squarely before the court. In light of the applicant's statement that he wanted to determine whether there were related entities that could be liable, the court unsurprisingly denied the application, stating, "even if the legal or financial relationship materials [could] be construed as 'for use' in a foreign proceeding," it would "use its discretion to deny the request." *Id*. at *3. For the same reason, Judge Koeltl denied Postalis's Section 1782 application seeking some of the same information sought by ADCAP in this case. *In re Postalis*, 2018 WL 6725406, at *5. (citing to Postalis's own public statements in Brazil and by its U.S. counsel that it was making the Section 1782 application to obtain discovery to support a new action against BNY Mellon in the U.S.).

ADCAP attempts to distinguish *Postalis* and *Ayyash* by pointing out that it switched strategy after hiring U.S. counsel and has stated in an affidavit that it only intends to use the discovery sought in the Brazil proceeding. It points out that there is no basis for a contractual or securities lawsuit against BNY Mellon in the U.S. because BNY Mellon has no contractual relationship with DTVM and ADCAP does not own shares in BNY Mellon. At oral argument, however, it was not willing to state that there are no other potential U.S. claims, such as claims for contribution or indemnification, should it succeed in its action against DTVM in Brazil. On the other hand, it was willing to enter into a stipulation and protective order that any information obtained through its Section 1782 application could not be used in an action against BNY Mellon in the U.S. Insofar as BNY Mellon has vehemently denied liability and directed ADCAP to focus on the Brazil litigation, ADCAP pointed out in oral argument that it was

hypocritical for the bank to now preclude ADCAP from obtaining discovery for just that purpose—that it, pursuing DTVM in Brazil.

After careful consideration of the application and the evidence presented, the Court finds that ADCAP has not met its burden of showing that the discovery sought is for use in the Brazil litigation. Several facts lead the Court to this conclusion. The first and most obvious facts are ADCAP's public statements that it intends to sue BNY Mellon in the United States and that it would be raising money for this purpose. Notably, it still maintains the "war chest" collected for suing BNY Mellon in the U.S.

Second, when asked during oral argument whether, in light of its supposed change in litigation strategy, it was prepared to release BNY Mellon from claims in the U.S., ADCAP's counsel stated ADCAP was not prepared to do so.

Third, the proposed subpoena itself undercuts ADCAP's claim that the application is solely for use in a foreign proceeding. To be sure, some of the information sought could be used to ADCAP's advantage in the Brazil litigation, however, the information is not tailored to information about DTVM and its employee's conduct vis-à-vis the Postalis funds. Rather, it seeks extensive information about the links between DTVM and its direct and indirect parents that would enable ADCAP to determine the extent to which U.S. entities could be liable under some theory for losses allegedly caused by DTVM, including for indemnification – an action explicitly mentioned by ADCAP's Brazilian lawyer when writing to BNY Mellon prior to institution of this action. (Rosenthal Decl., Exhs. H, I, J.) That the subpoena is not tailored for the Brazil action is clear by the broad definition of BNY Mellon to include any and all related

13

entities (foreign and domestic), and requests for information about conduct and knowledge of BNY Mellon specifically.  For example, ADCAP requests:

- Documents reflecting services rendered by BNY Mellon entities outside of Brazil (including in the U.S.) to Postalis between 2010 and 2019;

- Documents reflecting findings from continuous monitoring of DTVM's activities prepared and/or examined by departments of Compliance, Asset Allocation, Operational Risk & Internal Controls and/or Legal of BNY Mellon entities outside of Brazil (including in the U.S.);

- Communications between employees of BNY Mellon entities outside of Brazil (including in the U.S.) with the principals of Global Gestao em Saude or Canabrava group; and

- Any and all internal analyses conducted by BNY Mellon U.S. entities in connection with potential liability of BNY Mellon entities in and outside of Brazil to Postalis beneficiaries and/or ADCAP's members.

If ADCAP were truly seeking documents for use in the Brazil litigation, it would have tailored its requests to seek documents specifically concerning DTVM's activities.  Nowhere in its papers nor during oral argument did ADCAP explain how the vast amount of information it seeks goes to elements of its claims in the Brazil proceeding.  That Postalis included requests that focus on the conduct and knowledge of BNY Mellon, even though it is not a party to the Brazilian litigations, was one of the reasons Judge Koeltl found the Postalis application was not "for use" in the Brazilian litigations.  *In re Postalis*, 2018 WL 6725406, at *4; *see also In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420, *6 (S.D.N.Y. June 29, 2015) ("while

14

theoretically usable in India," questioning discovery request as truly for use in that jurisdiction as opposed to in the U.S. but assuming without deciding that discovery was for use in a foreign proceeding). As the court explained in *In re Certain Funds, Accounts, &/or Investment Vehicles Managed by Affiliates of Fortress Investment Group LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), courts must guard against "the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse. The latter situation is not an appropriate one for a court to compel discovery."

Even assuming the documents were for use in the Brazil litigation, the Court in its discretion would deny the application under the *Intel* factors.

The first factor -- whether the person from whom discovery is sought is a participant in the foreign proceeding – weighs against granting the application. Parent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of Section 1782 applications. *In re Top Matrix Holdings Ltd.*, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020). And, BNY Mellon is not a party to the Brazil litigation. Facially, therefore, the application would appear to tip in ADCAP's favor. However, the subpoena request itself is directed not just to BNY Mellon – indeed it defines BNY Mellon so broadly as to include DTVM, which *is* a participant in the foreign proceeding. ADCAP does not claim that it cannot obtain discovery from DTVM in the Brazil proceeding. Thus, this is not a situation where ADCAP only seeks documents in possession of the U.S. parent—it also seeks documents in the possession of DTVM. And, while there is no requirement that ADCAP exhaust discovery in Brazil, *Metallgesellschaft*, 121 F.3d at 79, the fact that its current application is so broad to also request documents possessed by DTVM goes to its burdensomeness on a non-party. ADCAP complains that it is not likely to

obtain documents from DTVM because results of a search warrant against DTVM turned up little. But the results of such a search are not necessarily indicative of what could be obtained from DTVM through civil discovery. *See Crye Precision LLC v. Duro Textiles, LLC*, 689 F. App'x 104, 108 (2d Cir. 2017) (in the context of a Rule 56(d) motion, acknowledging that a court has discretion to reject a request for discovery if the basis for the request is speculative). Thus, the first Intel factor weighs against granting the application. *See In re Postalis*, 2018 WL 6725406, at *5.

The second factor—the nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance—weighs in favor of the application. BNY Mellon does not argue otherwise, and ADCAP has submitted an affidavit from Brazil counsel explaining that the Brazilian Court would be receptive to discovery obtained through Section 1782 process. *See also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020) (recognizing that there was no indication Brazilian law would preclude use of information obtained via a Section 1782 application).

The third *Intel* factor—whether the discovery requested is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States— weighs against granting the application. The Federal Rules of Civil Procedure generally do not allow for pre-suit discovery. Fed. R. Civ. P. 27(a) (describing limited circumstances in which pre-suit discovery might be permitted). ADCAP does not dispute this federal rule. Moreover, other circumstances of the application suggest that ADCAP was not fully forthright in its purpose. It did not mention in its application that it had initially planned to bring litigation against BNY Mellon in the U.S. but changed strategy. This explanation only came to light after BNY Mellon

presented several public statements by ADCAP of its supposedly now abandoned intentions. This convenient explanation, with still no explanation of what it intends to do with all the money it collected to sue BNY Mellon in the U.S., suggests that ADCAP is attempting to get around the pre-suit discovery restrictions in U.S. federal court.  In addition, the Court notes that at least one of the requests seeks documents prepared by BNY Mellon's lawyers, which potentially implicates attorney-client privilege and work product protection.  The statute is clear that Section 1782 cannot be used to obtain privileged information.  *In re Tiberius Grp. AG*, 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020) (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247 (2d Cir. 2019)).

       The fourth factor—whether the discovery is unduly intrusive or burdensome—also weighs against granting the application.  In assessing this factor, courts apply the standards applicable under the Federal Rules of Civil Procedure.  *Id.* at *7.  The rules contemplate that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1); *see Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC*, 2022 WL 1977746 (S.D.N.Y. June 3, 2022) (denying motion to compel responses to overbroad document requests); *Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, *5 (S.D.N.Y. Apr. 8, 2019) (finding various document requests overbroad and discussing obligation to conduct "a form of cost-benefit analysis when propounding and formulating discovery requests" to ensure compliance with proportionality dictates of Rule 26); *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2016 WL 6902140 (E.D.N.Y. Nov. 23, 2016) (in context of Rule 45 subpoena, stating that requests for "any" and "all" documents are inherently overbroad).

While ADCAP contends that it narrowly tailored its requests for relevant information, the Court disagrees.  Most of the requests seek "all" documents concerning broad subject matters from every BNY Mellon entity, foreign and domestic, from 2010 to 2020.  Requests for "all" documents are inherently overbroad unless the "all" refers to a very discrete set of documents such as "all" contracts between DTVM and Postalis.  *See Gropper v. David Ellis Real Est., L.P.*, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014).

Further, ADCAP does not explain how the requests are tailored to the claims and defenses or proportional to the needs of the case.  The alleged mismanagement of the Postalis funds took place primarily from 2011 to 2015, but the time period for which documents are requested extends far beyond this period.  Similarly, one of the alleged DTVM wrongdoers—Jose Carlos Lopes Xavier de Oliveira—has not worked for DTVM since 2015.  Two other former employees of DTVM who also are accused of wrongdoing also appear to have been discharged in or about the same time.  (Rosenthal Decl., Exh. H.)   This too suggests the time frame for the requested documents is overbroad.

In sum, three of the four *Intel* factors weigh against granting the application.

## CONCLUSION

For the reasons set forth above, the application is DENIED.  The Court is sympathetic to the plight of ADCAP's members and notes that this decision does not preclude ADCAP from making another application under Section 1782 at a later stage in the Brazil litigation that does not suffer from the infirmities identified above.

**This resolves the motion at ECF No. 1 and the Clerk of the Court is respectfully requested to close this miscellaneous case.**

**SO ORDERED.**

DATED:       New York, New York
             October 4, 2022

*Katharine H Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge