UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

In re application of Associacão dos Profissionais dos
Correios

No. 22-MC-132 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Applicant Associacão dos Profissionais dos Correios ("ADCAP"), the Brazilian postal

workers association, applies under 28 U.S.C. § 1782(a) for an order authorizing discovery from

Respondent the Bank of New York Mellon Corporation ("BNY Mellon"). According to ADCAP,

it seeks the requested documents for use in a Brazilian lawsuit against, among others, one of BNY

Mellon's indirect subsidiaries. Magistrate Judge Parker issued an opinion and order denying the

application, and ADCAP filed an appeal before the U.S. Court of Appeals for the Second Circuit.

The Second Circuit dismissed ADCAP's appeal for lack of jurisdiction and remanded the matter,

instructing this Court to treat the opinion and order as a report and recommendation. ADCAP

subsequently filed objections to that report and recommendation, which are now before the Court.

For the reasons that follow, the Court adopts the recommendation that it deny ADCAP's

application, although its reasoning differs in part.

## BACKGROUND

ADCAP represents the interests of thousands of Brazilian postal workers whose pension

fund—administered by Postalis – Instituto de Seguridade Social dos Correios e Telégrafos

("Postalis")—recently lost billions of dollars. *See* de Almeida Rodrigues Decl. ¶¶ 25–26, Dkt. 4;

Capelli Fulginiti Decl. ¶ 5, Dkt. 5. In 2015, ADCAP initiated an action to recoup the losses suffered

by its members. *See* de Almeida Rodrigues Decl. ¶ 27. Through their suit, currently pending in the

Special Federal Court of São Paulo, ADCAP alleges that the losses resulted from "impropriety,

mismanagement, and a lack of fiduciary control and oversight" by BNY Mellon Serviços Financeiros Distribuidora de Títulos e Valores Mobilários S.A. ("BNY Mellon DTVM"), an indirect Brazilian subsidiary of BNY Mellon. Capelli Fulginiti Decl. ¶ 6; *see* Rosenthal Decl. ex. H at 3, Dkt. 17. It further alleges wrongdoing by several other defendants, including Postalis; KPMG Auditores Independentes ("KPMG"); and Empresa Brasileira de Correio e Telégrafos ("Correios"), the Brazilian national post office services company. *See* Capelli Fulginiti Decl. ¶¶ 6–7.

ADCAP's suit was dismissed in 2017 but subsequently reinstated by an appellate court in 2021. *See* de Almeida Rodrigues Decl. ¶¶ 49, 51. In the interim, ADCAP expressed a desire to sue BNY Mellon in the United States and collected funds from its members to support a suit. *See* Rosenthal Decl. exs. A–G. For example, on March 23, 2021, ADCAP, as translated, stated:

> For more than two years, ADCAP Nacional has been studying the possibility, assessing suppliers and costs to bring legal action against BNY Mellon Bank in the United States. All the analyses have been carried out, the structure is ready and, now, it submits to its assisted Postalis associates the possibility of participating in this lawsuit.

Rosenthal Decl. ex. A. After the appellate court reinstated the suit, ADCAP further expressed its intent to sue BNY Mellon in the United States. *See id.* exs. H, J. ADCAP contends that, after hiring U.S. counsel in April 2022, its strategy changed, and it abandoned its intent to sue BNY Mellon in the United States. *See* Oral Arg. Tr. 55:5–17, 56:24-58:4. Nonetheless, it did not return the collected funds, despite previously returning surplus funds. *See, e.g.*, Rosenthal Decl. ex. C. Then, on May 10, 2022, ADCAP, pursuant to 28 U.S.C. § 1782(a), applied to this Court for an order authorizing discovery from BNY Mellon.

ADCAP seeks documents from BNY Mellon and all of its subsidiaries and affiliates—Brazilian or otherwise—concerning a range of subjects. *See* Appl. ex. 2 at 2, 14–16, Dkt. 1. For

example, it seeks "[f]orensic accounting reports, internal audits, findings from continuous monitoring, and other related documentation . . . that encompassed the services rendered by BNY Mellon"—which it defines to include *all* subsidiaries—including "BNY Mellon Banco, BNY DTVM Brasil and/or BNY Ativos Brasil to Postalis from 2010 through 2019." *Id*. at 15. Another request is for documents on potential wrongdoing by executives allegedly involved in the financial mismanagement of the Postalis plans' assets. *See id*. at 2, 14; *see also* de Almeida Rodrigues Decl. ¶¶ 54–60.

On May 31, 2022, this Court referred ADCAP's application to Magistrate Judge Parker. *See* Referral Order, Dkt. 14. On October 4, 2022, Judge Parker issued an opinion and order denying ADCAP's application. She reasoned that ADCAP had failed to satisfy the statutory prerequisites for a discovery order and that, even if it had done so, other factors counseled against granting the application. *See* Op. & Order at 9–18, Dkt. 28. At the time, ADCAP did not file any objections to the opinion and order. Instead, it appealed directly to the Second Circuit, which dismissed the appeal for lack of jurisdiction and remanded the matter. *See* Order, Dkt. 38.

Before the Second Circuit's remand, the practice among many in this District had been for magistrate judges, upon referral, to issue opinions and orders deciding applications filed under 28 U.S.C. § 1782(a). *See, e.g.*, *In re Application of Caterpillar Crédito*, No. 22-MC-273, 2023 WL 5016497, at *1 n.1 (S.D.N.Y. May 24, 2023), *report and recommendation adopted*, 2023 WL 6938264 (S.D.N.Y. Oct. 20, 2023). The Second Circuit, however, instructed this Court to treat Judge Parker's opinion and order as a report and recommendation. It further advised that "[t]o the extent [BNY Mellon] argues that [ADCAP] has failed to file timely district court objections to the magistrate judge's order, that issue should be considered by the district court in the first instance." ADCAP subsequently filed objections to the report and recommendation.

## DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). If a party files specific and timely objections to a magistrate judge's findings or recommendations on a dispositive matter, a district judge reviews those findings or recommendations *de novo*, rather than for clear error. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *id.* advisory committee's notes; *Ortiz v. Comm'r of Soc. Sec.*, No. 22-CV-3052, 2023 WL 8603327, at *1 (S.D.N.Y. Dec. 12, 2023).[1] However, where "objections are nonspecific or 'merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition,'" the clear error standard applies. *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (quoting *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006)); *see also id.* n.4.

## I.    Timeliness of ADCAP's Objections

As the Second Circuit alluded to, there exists a threshold question of whether ADCAP filed timely objections to the report and recommendation. A "party may serve and file written objections" to a report and recommendation within fourteen days of being served with a copy of

---

[1] The order instructing this Court to treat Judge Parker's opinion and order as a report and recommendation did not specify whether it is to treat it as a report and recommendation on a dispositive or non-dispositive matter. Nonetheless, as other courts have, this Court interprets the Second Circuit's order as a directive to treat the opinion and order as a report and recommendation on a dispositive matter. *See, e.g.*, *In re Application of Caterpillar Crédito*, 2023 WL 5016497, at *1, *report and recommendation adopted*, 2023 WL 6938264; *In re Aguila Energia e Participacoes Ltda.*, No. 22-MC-228, 2023 WL 7001445, at *6 n.1 (S.D.N.Y. Aug. 22, 2023); *In re Niedbalski*, No. 21-MC-747, 2023 WL 4399003, at *1 (S.D.N.Y. July 7, 2023). Orders denying "applications for discovery under [§] 1782 are considered final adjudications and are immediately appealable pursuant to 28 [U.S.C. §] 1291." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017). Because Judge Parker's order was not immediately appealable, the Court assumes that the denial of an application for discovery under § 1782(a) is a dispositive order. *See In re IJK Palm LLC*, No. 16-MC-171, 2019 WL 2191171, at *2 (D. Conn. Jan. 30, 2019), *rev'd sub nom. on other grounds IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022). *But see In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 72 (S.D.N.Y. 2019) (explaining that "whether an order is 'final' or 'immediately appealable' under 28 U.S.C. § 1291 is not the same as whether an order is dispositive for purposes of a magistrate judge's authority under 28 U.S.C. § 636 or Federal Rule of Civil Procedure 72" (quoting 28 U.S.C. § 1291)).

it. 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(2). ADCAP did not file its objections until several months after Judge Parker issued her opinion and order, which the Court now treats as a report and recommendation. Accordingly, ADCAP did not timely file objections.

Generally, a party's failure to file timely objections to a report and recommendation "operates as a [non-jurisdictional] waiver of further judicial review of the magistrate's decision." *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). In that case, the district court need go no further than to review the report for clear error. *See Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018); *see also United States v. Male Juv. (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997) (observing that, absent timely objection, a "district court can adopt the report without making a *de novo* determination"). Nonetheless, the party does not waive further judicial review where the magistrate judge failed to provide "clear notice of the consequences" of such a failure. *Male Juv.*, 121 F.3d at 38.

Because the report was originally styled as an opinion and order—which, at the time, was consistent with practice in this district—it did not notify ADCAP of the consequences of failing to file timely objections. *See, e.g.*, *In re Application of Caterpillar Crédito*, 2023 WL 5016497, at *1 n.1; *cf. Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (explaining that a magistrate judge need not inform a *pro se* litigant of the consequences of failing to timely object to a non-dispositive order). Thus, ADCAP did not broadly waive its right to *de novo* review. *See Ohio v. Watson*, No. 22-CV-708, 2023 WL 6894812, at *1 (S.D. Ohio Oct. 18, 2023); *cf. Los Angeles. v. Granby Bd. of Educ.*, 227 F. App'x 47, 50 (2d Cir. 2007) (finding it "arguable that no [appellate] waiver occurred" given the lack of clear notice); *Caldwell v. Fort Lauderdale Airport Task Force*, 673 F. App'x 906, 911 n.1 (11th Cir. 2016) (conducting *de novo* review because the magistrate judge's report and recommendation did not provide clear notice).

## II.    Merits of ADCAP's Objections

Applying the *de novo* review standard, the Court turns next to the merits of ADCAP's objections.

District courts have the authority under 28 U.S.C. § 1782(a) to "order a person who resides or is found in the district to produce discovery in a foreign or international proceeding." *Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140, 143 (2d Cir. 2020); *see* 28 U.S.C. § 1782(a). To obtain such an order, "[t]he party seeking discovery must establish three statutory prerequisites: [that] (1) the person or entity from whom discovery is sought 'resides; or is 'found' in the district where the application is made; (2) the requested material is 'for use' in a foreign proceeding; and (3) 'the application is made by a foreign or international tribunal or any interested person.'" *IJK Palm LLC*, 33 F.4th at 675 (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)); *see* 28 U.S.C. § 1782(a).

If the party establishes the three statutory prerequisites, the court may exercise its discretion to order discovery. *See IJK Palm LLC*, 33 F.4th at 676. In doing so, the court "must take 'into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Id.* (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)). The following four factors—commonly known as the "*Intel* factors"—also "bear consideration":

(1) Whether the "person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent" because a foreign tribunal presumably has authority to order discovery on its own;

(2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) Whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) Whether the requests are unduly intrusive or burdensome.

*Id.* (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

ADCAP objects to Judge Parker's conclusion that it did not establish the second prerequisite—that "the requested material is 'for use' in a foreign proceeding." *IJK Palm LLC*, 33 F.4th at 675 (quoting 28 U.S.C. § 1782(a)). It further objects to her findings that the first, third, and fourth *Intel* factors favor denying the application. It does not object to any other finding or conclusion, in which the Court finds no clear error.

### A.  Statutory Prerequisites

The Court agrees with ADCAP that it satisfied the second statutory prerequisite for obtaining a obtaining a discovery order.

Judge Parker concluded that ADCAP failed to establish that the material sought was "for use" in a foreign proceeding based on several observations: (1) its public statements and fundraising demonstrating its intent to sue BNY Mellon in the United States; (2) its indication at oral argument that it was unprepared to release BNY Mellon from a potential suit in the United States; and (3) the subpoena's untailored nature, which, she reasoned, illustrated that ADCAP is not solely seeking documents for use in the Brazil litigation. *See* Op. & Order at 13–15. ADCAP argues principally that these observations are inaccurate.

To determine whether requested material is "for use" in a foreign proceeding, courts apply the plain meaning of "for use": whether the requested material "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Courts "have declined to read into Section 1782 categorical restrictions that lack textual support

when district courts in their discretionary review adequately can address the concerns raised." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 134. And numerous courts in this district and beyond have described the "for use" prerequisite as imposing a "*de minimis*" burden on applicants. *E.g.*, *In re Application of REFINERÍA DE CARTAGENA S.A.S.*, No. 23-MC-455, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024); *In re B&C KB Holding GmbH*, No. 22-MC-180, 2023 WL 4544775, at *2 (S.D.N.Y. June 8, 2023); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010). Section 1782, moreover, "does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135; *see Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015). In other words, the Court does not read into the "for use" prerequisite a categorical restriction on requesting material that may *also* be "for use" in a domestic proceeding. Accordingly, that requested material may be "for use" in a U.S. proceeding against BNY Mellon does not mean it is not also "for use" in the Brazilian proceeding.

Judge Parker correctly observed that ADCAP seeks the discovery "for use" in a potential suit against BNY Mellon in the United States. ADCAP nonetheless demonstrated that the requested material will *also* "be employed with some advantage or serve some use" in the Brazil proceeding. *Mees*, 793 F.3d at 298. ADCAP argued before Judge Parker that the material would "bolster and strengthen [its] arguments against Postalis, BNY Mellon [DVTM], KPMG, and Correios, and support [its] plea for indemnification by illustrating the breadth of the Brazil Defendants' wrongdoing." Appl.'s Mem. Law at 10, Dkt. 3. At least some of ADCAP's requests support its assertions regarding these intended uses. One request, for example, is for documents on potential wrongdoing by executives allegedly involved in the financial mismanagement of the Postalis plans' assets. *See* Appl. ex. 2 at 14; *see also* de Almeida Rodrigues Decl. ¶¶ 54–60.

Statements in declarations submitted by ADCAP further reinforce the proposition that ADCAP will use the desired documents in the Brazil litigation. According to Maria Inês Capelli Fulginiti, ADCAP's president, the "material from BNY Mellon US, BNY Mellon DTVM's [indirect] parent company, will prove itself beneficial to establishing the Brazil Defendants' liability in the Brazil Action." Capelli Fulginiti Decl. ¶ 19; *see id*. ¶ 23. André de Almeida Rodrigues, an attorney for ADCAP, expresses a similar sentiment. *See, e.g.*, Almeida Rodrigues Decl. ¶ 5.

While the Court has no doubt that at least some of the requested documents are being sought for use in a potential U.S. litigation, it finds that the requests themselves—contextualized by argument and supporting declarations—demonstrate that requested materials will also be used in the Brazil litigation. ADCAP thus established the statutory prerequisites for obtaining a discovery order.

### B.  Discretionary Considerations

The Court nonetheless exercises its discretion to deny ADCAP's application for a discovery order. ADCAP argues that, contrary to Judge Parker's findings, the first, third, and fourth discretionary *Intel* factors weigh in favor of granting its application. *See IJK Palm LLC*, 33 F.4th at 676. The Court finds that the first factor would weigh in favor of issuing a tailored discovery order, but it disagrees with ADCAP as to the other two factors—and, most importantly, it finds that the weight of the third factor is so significant here that it compels the denial of ADCAP's application.

#### 1.  First *Intel* Factor

As noted, the first *Intel* factor is "[w]hether the 'person from whom discovery is sought is a participant in the foreign proceeding.'" *IJK Palm LLC*, 33 F.4th at 676 (quoting *Intel*, 542 U.S.

at 264). "[T]he relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production." *In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15-MC-417, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (observing that the first *Intel* factor weighs against applicants that "for all intents and purposes . . . seek[ ] discovery from . . . their opponent" in the foreign litigation").

Judge Parker concluded that the first *Intel* factor weighs against granting ADCAP's application because—although BNY Mellon is not a party to the Brazil litigation—the proposed subpoena "defines BNY Mellon so broadly as to include [BNY Mellon] DTVM, which *is* a participant in the foreign proceeding." Op. & Order at 15. She further reasoned that ADCAP only speculates that it cannot obtain the desired materials through civil discovery in the Brazil litigation.

While the Court agrees with Judge Parker's observation about civil discovery, it concludes that the first *Intel* factor would weigh in favor of granting the application were ADCAP to tailor its requests to material not shared with BNY Mellon DTVM. *See, e.g*., *In re T-Sys. Scheiz AG*, No. 20-MC-308, 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020) (granting a § 1782 application after limiting the subpoena's definition of the respondent "to include only the named [r]espondent"). ADCAP could thus, for example, seek any internal investigation reports on potential wrongdoing by relevant executives that BNY Mellon produced but did not share with BNY Mellon DTVM. *See* Appl. ex. 2 at 14.

As Judge Parker correctly noted, parent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of § 1782 applications. *See In re Top Matrix Holdings Ltd*., 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020). Thus, were the subpoena requests further tailored, ADCAP's application would stand in contrast to that in *In re Application of Elvis*

*Presley Enterprises LLC*, in which "all" the information sought from a parent company was available to the subsidiary. No. 15-MC-386, 2016 WL 843380, at *4 (S.D.N.Y. Mar. 1, 2016); *see also In re Kreke Immobilien KG*, No. 13-MC-110, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) (observing that the first *Intel* factor would weigh against granting an application where the petitioner "only" sought documents from a parent because it wholly owned the subsidiary).

Were the Court to consider only the first *Intel* factor, it would issue a tailored discovery order.

### 2. Third *Intel* Factor

It does not consider only the first *Intel* factor, however, and it finds that the third *Intel* factor weighs dispositively against granting the application. Under the third *Intel* factor, courts consider whether "a discovery request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *IJK Palm LLC*, 33 F.4th at 676 (quoting *Intel*, 542 U.S. at 264–65); *see also, e.g.*, *In re Postalis*, No. 18-MC-497, 2018 WL 6725406, at *6 (S.D.N.Y. Dec. 20, 2018) (concluding that the third *Intel* factor weighed against a request to the extent the applicant sought pre-litigation discovery). Where an "applicant 'is attempting to use foreign litigation as a ruse for obtaining discovery' for use in other foreign proceedings[,] [the respondent] 'can and should bring evidence of such chicanery to the Section 1782 court's attention.'" *In re Accent Delight Int'l Ltd*., 869 F.3d at 135 (quoting *Glock*, 797 F.3d at 1009). Such evidence can "provide good cause for [the] entry of a protective order prohibiting use of the discovery in other proceedings and might support denying the Section 1782 application altogether." *Id*. (citations omitted); *Intel*, 542 U.S. at 265 (considering concealment a discretionary consideration). In some instances, a more tailored discovery order may be appropriate. *See*

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

BNY Mellon offered persuasive evidence that ADCAP's request is—at least in part—a veiled attempt to circumvent the United States' prohibition on most pre-suit discovery, *see* Fed. R. Civ. P. 27(a), and "ruse to obtain discovery for use in" a potential suit in the United States, *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135 (quoting *Glock*, 797 F.3d at 1009). As Judge Parker observed, ADCAP's public statements and fundraising demonstrate its intent to sue BNY Mellon in the United States. For example, on March 23, 2021, ADCAP, as translated, stated:

> For more than two years, ADCAP Nacional has been studying the possibility, assessing suppliers and costs to bring legal action against BNY Mellon Bank in the United States. All the analyses have been carried out, the structure is ready and, now, it submits to its assisted Postalis associates the possibility of participating in this lawsuit.

Rosenthal Decl. ex. A. While ADCAP claims that it abandoned its intent to sue BNY Mellon in the United States after hiring U.S. counsel, it did not return the funds, despite previously returning surplus funds. *See, e.g.*, Rosenthal Decl. ex. C. In addition, at oral argument, ADCAP was unwilling to concede that it would not pursue any claims against BNY Mellon in the United States. Oral Arg. Tr. 13:22 –15:4. In its application, it also failed to offer evidence that the requested material is solely for the use in the Brazilian proceeding. Capelli Fulginiti's and de Almeida Rodrigues' declarations, for example, merely indicate what the Court has already concluded: that *one* use for the requested material is to help establish liability in the Brazilian proceeding. *See* Capelli Fulginiti Decl. ¶¶ 19, 23; de Almeida Rodrigues Decl. ¶ 5. The broad nature of ADCAP's requests also suggests a continued intent to sue BNY Mellon in the United States. For instance, ADCAP seeks certain documents reflecting services rendered to Postalis by any BNY Mellon subsidiary or affiliate in the United States. *See* Appl. ex. 2 at 15.

The question, then, is whether the Court should issue a protective order, a tailored

discovery order, or deny ADCAP's application altogether. Generally, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of [an applicant's] participation in . . . foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A.*, 51 F.3d at 1101. The Court can also issue a protective order. *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135.

Although a tailored discovery would be appropriate to address the first *Intel* factor, it would not be sufficient here. Nor would a protective order. "[A] protective order is not an effective remedy for a [broad] discovery request," like ADCAP's, "that is searching for whether to bring a lawsuit in the United States." *In re Postalis*, 2018 WL 6725406, at *4. After all, "[t]he results of the discovery request can shape the decision [of] whether to bring such a lawsuit and thereafter the types of documents to seek, even if the documents that are produced in response to the § 1782 application are never actually used in the United States lawsuit." *Id*. A more tailored discovery order here would not obviate these risks.

A proposed revision to the requests offered by ADCAP demonstrates just this. ADCAP asserts that it could revise one of its requests "to focus solely on communications concerning BNY [Mellon DTVM]'s relationship with [certain entity] assets, or their principals, and [BNY Mellon DTVM's] justification for investing in th[ose] assets under the Postalis Plans." Objs. at 17, Dkt. 39. But its revised request still seeks "[c]ommunications exchanged by any member of *BNY Mellon*" regarding BNY Mellon DTVM's administration of the Postalis plans, *id*. at 17 n.9, and such communications could "shape" the decision about whether to sue BNY Mellon in the United States, *In re Postalis*, 2018 WL 6725406, at *4.[2]

The Court thus concludes that the third *Intel* factor is reason enough to deny ADCAP's

---

[2] Furthermore, were the Court to tailor the discovery order as envisioned under its analysis regarding the first *Intel* factor, it would not obviate the risks articulated above.

application.

**3. Fourth *Intel* Factor**

In any event, for substantially the same reasons as Judge Parker, the Court finds that the fourth factor—whether the requests are "unduly intrusive or burdensome," *Intel*, 542 U.S. at 2665—also weighs against granting ADCAP's application.

**CONCLUSION**

For the foregoing reasons, the Court adopts Judge Parker's recommendation as modified. ADCAP's application for an order authorizing discovery from BNY Mellon is denied. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:      September 25, 2024
           New York, New York

_____
Ronnie Abrams
United States District Judge

14